UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/24/2026

------------------------------------------------------------------ X
:
ELAINE GREENWOOD,                                  :
:
                                     Plaintiff,    :           1:23-cv-10516-GHW
:
              -v-                                  :        MEMORANDUM OPINION &
:                    ORDER
AMERICAN KENNEL CLUB,                              :
:
                                     Defendant.   :
:
------------------------------------------------------------------ X

GREGORY H. WOODS, United States District Judge:

## I.    INTRODUCTION

For over forty years, Plaintiff Elaine Greenwood was an internationally respected and award-winning dog breeder.  Ms. Greenwood built her breeding and dog-showing business, Logres Farm in North Carolina, on her dedication to, and love for, her dogs.  Ms. Greenwood's animals were her source of pride, and, ultimately, her downfall—allegedly used as leverage to keep Ms. Greenwood compliant and socially isolated so that certain individuals allegedly associated with the American Kennel Club ("AKC") could sexually assault her with impunity for over three decades.

Ms. Greenwood alleges that in 1995, and then again in 1996, she was raped by men she believes are AKC "agents" or employees while she was attending AKC events in New York City.  One of the men, Jay Phinizy, was, at the time of the rape, an AKC board member, judge, and AKC's "Chairman of Events."  The other man, Stephen Daniel Gladstone—also an AKC judge—allegedly continued to sexually assault Ms. Greenwood for over two decades, from the time of the initial 1995 rape until his death in 2017.

On November 22, 2023, Plaintiff filed this action, asserting various state law claims arising from both her alleged 1995 and 1996 sexual assaults in New York City and from the alleged years of sex trafficking that occurred thereafter in North Carolina.  Ms. Greenwood brought her claims—not

against her alleged abusers—but against AKC, arguing that AKC facilitated, aided, or otherwise failed to stop, Mr. Gladstone's and Mr. Phinizy's assaults. Following several amendments of her complaint, AKC moved to dismiss Ms. Greenwood's claims under Fed. R. Civ. P. 12(b)(6).

On November 20, 2025, the Court granted AKC's motion to dismiss in its entirety—concluding that Ms. Greenwood was precluded from relitigating her claims arising from conduct that occurred in North Carolina under the law of the case doctrine and dismissing her remaining New York state law claims for aiding and abetting, intentional infliction of emotional distress, and negligence without prejudice. The Court granted Ms. Greenwood limited leave to amend her claims to cure the deficiencies identified in its November 20, 2025 opinion.

Following the Court's decision, Ms. Greenwood filed a fifth amended complaint ("FAC"), which AKC has again moved to dismiss under Fed. R. Civ. P. 12(b)(6). Although Ms. Greenwood alleges more specific facts in her FAC to try to support the conclusion that AKC had knowledge of, and intentionally facilitated, the underlying assaults, Ms. Greenwood's FAC still falls short of curing the deficiencies the Court identified in its November 20, 2025 opinion. Because Ms. Greenwood seeks to hold AKC liable for the assaults perpetrated by Mr. Gladstone and by Mr. Phinizy, but does not adequately plead either that AKC knew the assaults occurred or that it took any action to aid in their commission, AKC cannot be held liable for the assaults. Accordingly, Ms. Greenwood has not adequately pleaded her claims for aiding and abetting, intentional infliction of emotional distress, or negligent supervision against AKC and Defendant's motion to dismiss is GRANTED.

## II.    BACKGROUND[1]

The Court's prior Opinion provided a comprehensive description of the allegations in Ms. Greenwood's initial and fourth amended complaints.  *See generally* Op.  Because Ms. Greenwood's FAC "realleges and incorporates by reference all [] factual allegations contained in the Fourth

---

[1]    The facts relevant to this motion are drawn from Plaintiff's fifth amended complaint, Dkt. No. 43 ("FAC"), together with Plaintiff's prior complaints, Dkt. No. 1 ("Compl."); Dkt. No. 28.  The facts pleaded in Plaintiff's complaints are accepted as true for the purposes of this motion, except to the extent that the factual allegations are contradictory or internally inconsistent.  *See, e.g.*, *Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012); *see also Spiteri v. Russo,* No. 12-CV-2780, 2013 WL 4806960, at *8 (E.D.N.Y. Sept. 7, 2013) (collecting cases), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015) (summary order); *U.S. Bank Nat. Ass'n v. Bank of Am., N.A.*, No. 12 CIV. 4873 CM, 2012 WL 6136017, at *7 (S.D.N.Y. Dec. 11, 2012) ("Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (quoting *Nationwide Mut. Ins. Co. v. Morning Sun Bus. Co.*, No. 10 Civ. 1777, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011))).  However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court notes that even though it expressly advised Ms. Greenwood that an amended complaint would "completely replace, not supplement" her earlier-filed complaint, *see* Dkt. No. 33 (instructing Ms. Greenwood that an amended complaint would "completely replace, not supplement, the original complaint"), Ms. Greenwood filed her FAC under the apparent understanding that she could incorporate the factual allegations included in her previous complaints by reference into her operative complaint, the FAC.  FAC ¶ 7.  "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."  *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977).  When the plaintiff is *pro se*, however, some courts "will consider facts from the [p]laintiff's [previous complaint] that have not been repeated in the [amended complaint]."  *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-cv-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citations omitted); s*ee also, e.g., Little v. City of New York*, No. 13-cv-3813, 2014 WL 4783006, at *1 (S.D.N.Y. Sept. 25, 2014) ("The plaintiff . . . appears to believe that the Amended Complaint supplements, rather than replaces, the Original Complaint.  Because the plaintiff is proceeding pro se, the Court will consider the Original Complaint and the Amended Complaint together as the operative pleading."); *Collins v. Goord*, 438 F. Supp. 2d 399, 403 & n.1 (S.D.N.Y. 2006) (deeming factual allegations contained in pro se plaintiff's brief to "supplement" his pleading); *Camarano v. City of New York*, 624 F. Supp. 1144, 1147–48 (S.D.N.Y. 1986) ("Apparently viewing the amended complaint as supplemental, [plaintiff] did not repeat in his later filing the allegations set forth in the original complaint. . . .  Since pro se civil rights complaints should be read with generosity, [plaintiff's] complaint must be given the benefit of incorporation." (internal quotation marks and citation omitted)).  Here, given Ms. Greenwood's *pro se* status, the Court will consider factual allegations made by Ms. Greenwood in her initial complaint, *see generally* Compl., and her fourth amended complaint, Dkt. No. 28.

And for this reason, AKC's argument that Ms. Greenwood's claims are untimely under the Adult Survivors' Act ("ASA"), N.Y. C.P.L.R. § 214-j, is not persuasive.  AKC does not contend that the Court's earlier decision that Ms. Greenwood's state law claims were timely because the claims were filed within the ASA's one-year "revival" window was in error or that some new fact in the FAC undermines the applicability of the ASA to Ms. Greenwood's claims.  *See* Dkt. No. 42 ("Opinion" or "Op.") at 17–19.  Rather, AKC's sole argument is that Ms. Greenwood's state law claims are now time-barred because she "fail[s] to reference the [ASA] in her Fifth Amended Complaint."  Dkt. No. 47 ("Mem.") at 9.  Because the Court considers the allegations from Ms. Greenwood's initial and her fourth amended complaint here, the Court will not dismiss Ms. Greenwood's claims as time-barred simply because the FAC fails to include a direct citation to the ASA as the statutory basis for her claims.  Ms. Greenwood has continually alleged that her claims are revived pursuant to the ASA.  *See generally* Compl.; Dkt. No. 28.  So too, does her opposition to Defendant's pending motion.  Dkt. No. 52 ("Opp'n") at 14 ("Defendant's [statute of limitations] argument attempts to transform a statutory revival mechanism into a pleading formality.  That is not a . . . basis for dismissal.").  The FAC explicitly references one of the ASA's requirements for revival because it alleges that the 1995 and 1996 assaults "constituted predicate sexual offenses."  FAC ¶¶ 4 ("Venue is proper in this District . . . because *the predicate sexual offense*s occurred in New York County."), 15.  Dismissing Ms. Greenwood's claims for the hyper-technical reason advanced by AKC, *see* Mem. at 9, would not be consistent with the Court's obligation to treat this *pro se* litigant's submission with "special solicitude."

3

Amended Complaint and the Original Complaint,"[2] familiarity with most of the facts of this case is presumed.  FAC ¶ 7.  The reader is referred to the Court's prior Opinion for a full description of the factual and procedural history of this case.  However, because Ms. Greenwood's FAC adds what she describes as "new and particularized factual allegations" that she believes will "cure the specific deficiencies identified by the Court," FAC ¶ 1, in its prior Opinion, a brief overview of the new allegations contained in the FAC, and the relevant procedural history of this case, is provided here for context.

Ms. Greenwood, proceeding *pro se*, filed her initial complaint on November 22, 2023.  *See generally* Compl.  Ms. Greenwood's initial complaint named AKC, and certain individuals associated with AKC, many of whom are North Carolina residents, as defendants.  *Id.* ¶¶ 55–63.  Ms. Greenwood did not name either Mr. Gladstone or his estate as a defendant.  *See generally id.*  In her initial complaint, Ms. Greenwood claimed that Mr. Gladstone "sexually assaulted her at an AKC event in New York City in 1995, raped her at a New York City hotel in 1995, and then continued to sexually assault her in Carthage, North Carolina from 2005 until his death in 2017," as a result of an agreement between Mr. Gladstone and Ms. Greenwood's husband.  Dkt. No. 4 at 1.

This Court was assigned to this case on February 4, 2025.  Following several amendments to her complaint, *see* Dkt Nos. 7, 25 & 27, Ms. Greenwood filed her fourth amended complaint on July 22, 2025, Dkt. No. 28.  On August 29, 2025, AKC moved to dismiss the fourth amended complaint. Dkt. Nos. 36 & 37.  Ms. Greenwood filed her opposition on September 25, 2025.  Dkt. Nos. 39 & 40.  And on October 9, 2025, AKC replied.  Dkt. No. 41.

On November 20, 2025, the Court granted AKC's motion to dismiss in its entirety.  *See generally* Op.  As relevant here, the Court dismissed Ms. Greenwood's aiding and abetting claim without prejudice because she did not adequately plead that AKC had actual knowledge of the

---

[2] *See supra* note 1 and accompanying text.

underlying sexual assaults at the time they occurred and because she had not alleged that AKC "substantially assisted" in the assaults. *Id.* at 19–21. Next, the Court dismissed Ms. Greenwood's claim for intentional inflection of emotional distress ("IIED"), also without prejudice, because she had not adequately pleaded that AKC's conduct was sufficiently "outrageous." *Id.* at 21–23. Finally, the Court dismissed Ms. Greenwood's negligent supervision claim without prejudice because Ms. Greenwood had not pleaded that Mr. Gladstone was employed by AKC at the time of the assaults and because, even assuming that Mr. Phinizy was an AKC employee at the time of his alleged assault, Ms. Greenwood had not adequately pleaded that AKC had knowledge of his conduct. *Id.* at 24–26. The Court granted Ms. Greenwood limited leave to amend her aiding and abetting, IIED, and negligent supervision claims, affording her the opportunity to "cure the deficiencies" identified in the Court's Opinion. *Id.* at 26–28.

On December 22, 2026, Ms. Greenwood filed her FAC—the operative complaint. *See generally* FAC. The FAC adds those "new . . . factual allegations" that Ms. Greenwood has presented to "cure the specific deficiencies identified by the Court" in its prior Opinion. *Id.* ¶ 1. Otherwise, the FAC "realleges and incorporates by reference all [] factual allegations contained in the Fourth Amended Complaint (Dkt. [No.] 28) and the Original Complaint (Dkt. [No.] 1)." *Id.* ¶ 7.

In her FAC, Ms. Greenwood alleges that in early March 1995, while attending an AKC "Trial Board" event, she was raped by Mr. Gladstone. *Id.* ¶ 8. Ms. Greenwood alleges that the March 1995 rape occurred "in connection with AKC-governed proceedings" and while Ms. Greenwood was "lodged at the official host hotel designated by AKC." *Id.* ¶¶ 8, 10 ("The rape occurred in conjunction with and on the premises of the host hotel for an AKC event."), 12.

"Immediately following the [] assault," Ms. Greenwood reported Mr. Gladstone's conduct to

"at least three individuals who," she alleges, "are or were agents[3] of [] AKC."[4]  *Id.* ¶ 16.  Specifically,

---

[3]      Ms. Greenwood alleges that these individuals were AKC "agents" at the time of the underlying assaults and when Ms. Greenwood reported Mr. Gladstone's conduct.  Under New York common law, "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act."  *N.Y. Marine & Gen. Ins. Co. v. Tradeline, L.L.C.*, 266 F.3d 112, 122 (2d Cir. 2001).  "Agency is a legal concept which depends upon the existence of required factual elements:  the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking[,] and the understanding of the parties that the principal is to be in control of the undertaking."  *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2d Cir. 1994) (quoting Restatement (Second) of Agency § 1 cmt. b (1958)).  "On a motion to dismiss, the relevant inquiry is 'whether plaintiff has made specific allegations from which an agency relationship can be inferred.'"  *SING for Serv., LLC v. DOWC Admin. Servs., LLC*, No. 20-cv-5617, 2022 WL 36478 at *18 (S.D.N.Y. Jan. 3, 2022) (quoting *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 121 (E.D.N.Y. 2011)).

        Ms. Greenwood alleges that Mr. Gladstone, Mr. Phinizy, Mr. Pede, and Mr. Shelton were AKC "agents" because "[e]ach of these individuals exercised AKC authority and acted as AKC for purposes of event oversight, discipline, and governance."  FAC ¶ 45.  This allegation is purely conclusory, and on a motion to dismiss, the Court does not accept unsupported legal conclusions as true, even when those conclusions are alleged by a *pro se* litigant.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).  And Ms. Greenwood's other allegations do not suffice to adequately plead that Mr. Gladstone, Mr. Pede, or Mr. Shelton were AKC agents or employees.  Ms. Greenwood alleges that Mr. Gladstone, Mr. Pede, and Mr. Shelton were AKC "agents" by virtue of their roles at the time of the assaults and her reports of those assaults.  FAC ¶¶ 9 (alleging that Mr. Gladstone was an AKC judge and an officer of an AKC member club), 16 (alleging that Mr. Pede was an AKC judge, officer of an AKC member club and delegate and that Mr. Shelton was also an AKC judge, AKC event chair, and officer of an AKC member club).  While in her FAC, in contrast to her fourth amended complaint, Ms. Greenwood now alleges that these individuals were AKC judges or AKC member club officers at the time of the alleged assaults and her subsequent reports, she still does not allege facts to support the conclusion that AKC judges or AKC member club officers have any formal agency or employment relationship with AKC by virtue of those positions.  *See* FAC ¶ 9 ("At all times relevant hereto, Stephen Daniel Gladstone was an AKC licensed judge . . . .").  In short, Ms. Greenwood does not allege facts sufficient for Court to conclude that AKC judges or officers of AKC member clubs are agents of AKC under New York law.  Nor does she allege facts to support the conclusion that "AKC judges," or "officers of AKC member clubs," are affiliated with AKC in a formal employer-employee relationship. *Maurizi v. Callaghan*, No. 20-CV-922, 2022 WL 1446500, at *13 (W.D.N.Y. Feb. 25, 2022), *report and recommendation adopted*, No. 20-CV-922, 2022 WL 1444182 (W.D.N.Y. May 5, 2022) ("Plaintiff's allegations that unidentified 'skating judges' knew of the alleged abuse are also insufficient . . . because there are no allegations that such judges are employees or agents of [defendant]." (internal citations omitted)).  Because Ms. Greenwood has not alleged sufficient facts to plead the existence of a formal agency (or employment relationship) relationship between AKC and AKC judges or officers of AKC member clubs, she had not adequately pleaded that Mr. Gladstone, Mr. Pede, or Mr. Shelton were AKC agents or employees at the time Ms. Greenwood alleges that the sexual assaults occurred or when she reported Mr. Gladstone's conduct.  *See* Op. at 4 n. 3 (same except noting that Ms. Greenwood had failed to allege that these individuals were affiliated with AKC *at the time of the alleged assaults* or when she reported the assaults).

        Mr. Phinizy, however, is different by virtue of the role he held at the time Ms. Greenwood reported Mr. Gladstone's 1995 assault and at the time he allegedly assaulted her.  Ms. Greenwood alleges that at the time she reported Mr. Gladstone's conduct and at the time of Mr. Phinizy's assault, Mr. Phinizy was a member of AKC's board of directors.  FAC ¶ 13 (alleging that Mr. Phinizy was an AKC judge, member of AKC's board of directors, officer of an AKC member club, and chairman of the events committee).  And Ms. Greenwood alleges that because of AKC's unique governance structure, Mr. Phinizy was "arguably one of the only people qualified to address Gladstone's conduct."  *Id.* ¶ 23.  As discussed herein, because Ms. Greenwood has failed to state her state law claims for alternate reasons, the Court need not and does not reach the question of whether individual members of AKC's board of directors are agents of the organization as a matter of law.

[4] Ms. Greenwood also alleges that "[b]y 2015 AKC had actual knowledge that Gladstone was using his AKC-granted authority and prestige to maintain his coercive control over" her.  FAC ¶ 33.  Those allegations however relate to AKC's alleged conduct in North Carolina; they do not speak to the 1995 or 1996 assaults.  *Id.* ¶¶ 33–40.  Chief Judge Laura T. Swain, to whom this case was previously assigned, transferred Ms. Greenwood's claims arising from the North Carolina conduct to the Middle District of North Carolina.  Dkt. No. 4. at 3.  As a result, the allegations do not relate to the remaining claims in this action.

during an AKC event in May 1995, Ms. Greenwood reported Mr. Gladstone's assault to both Wallace Pede, an "AKC licensed [J]udge, Officer of an AKC Member Club, and AKC Delegate," and to Bill Shelton, an "AKC Judge, AKC Event Chair, and [O]fficer of a Member Club." *Id.* And in September 1995, during an AKC event held in California, Ms. Greenwood reported Mr. Gladstone's assault to Mr. Phinizy—"an AKC Judge, Officer of an AKC Member Club, and a member of the AKC Board of Directors." *Id.* ¶¶ 13, 16.  She alleges that Mr. Phinizy was also the "Chairman of the Event Committee for the AKC-licensed venue at which" Mr. Gladstone raped her. *Id.* ¶ 41.

Ms. Greenwood alleges that because of AKC's unique governance structure, Mr. Phinizy was "arguably one of the only people qualified to address Gladstone's conduct." *Id.* ¶ 23.  Ms. Greenwood alleges that she reported Mr. Gladstone's conduct to Mr. Phinizy in May 1995 because he held "disciplinary authority" within AKC. *Id.*  Specifically, she alleges that because he was Chairman of the Event Committee, Mr. Phinizy "was the highest-ranking AKC authority with jurisdiction over conduct occurring at the event venue and host hotel." *Id.* ¶ 43.  And that "[t]here are no other [individuals] within the structure of the AKC to 'report' to." *Id.* ¶¶ 32, 46.

Tragically, Ms. Greenwood alleges that she was later raped by Mr. Phinizy—the same man to whom she had previously reported Mr. Gladstone's assault—while she was attending the February 1996 Westminster Kennel Club Dog Show, another "AKC-licensed event." *Id.* ¶ 13.  She alleges that the rape occurred at the "AKC-designated host hotel" for the event. *Id.* ¶ 25.

Just two days later, during the same dog show, Ms. Greenwood alleges Mr. Gladstone sexually assaulted her for the second time while on show grounds. *Id.* ¶ 14.  Ms. Greenwood alleges that at the time of both the 1995 and 1996 sexual assaults, "Gladstone was clearly 'affiliated' and/or an agent of the AKC," *id.* ¶ 11, because he was "an AKC licensed judge" and an "Officer of an

7

AKC Member Club."[5]  *Id.* ¶ 9.

Ms. Greenwood alleges that pursuant to AKC's "Rules Applying to Dog Shows" (the "Rules"), AKC exercises "disciplinary" and "regulatory authority" over any "conduct prejudicial to the sport," *id.* ¶ 27, that occurs "in connection with" any AKC-governed events," including "over conduct on show grounds and at the host hotel."  *Id.* ¶¶ 8, 14.  She alleges that, at the time of the 1995 and 1996 rapes, AKC's Rules defined "conduct prejudicial to the sport" as conduct that "if a family attending their first AKC dog show were to witness said conduct [] they [would] find such conduct offensive, making it less likely they would want to participate in AKC events in the future."  *Id.* ¶ 29.  "AKC's governance structure vests authority over discipline and conduct at AKC events and venues solely and exclusively in its Board of Directors, its licensed judges[,] and its officers of AKC Member Clubs," for both "informal, on-site handling" and for "more formal proceedings."  *Id.* ¶¶ 24, 28.  And she alleges that every participant and attendee at an AKC event must execute a form acknowledging AKC's rules "at the time of entry" to the event.  *Id.* ¶ 27.

"AKC rules and policies authorize discipline, suspension, and disqualification of individuals for conduct occurring at host hotels when such conduct occurs during or in connection with an AKC-licensed event."  *Id.* ¶ 26.  Ms. Greenwood alleges that "AKC routinely enforces these rules and has disciplined participants for conduct occurring at host hotels, including non-competition conduct, because such locations are considered part of the event environment."  *Id.*

---

[5] Here, the FAC's allegation that Mr. Gladstone was a member of AKC's board of directors in 1995 and 1996 is "internally inconsistent" with and "contradictory" to Ms. Greenwood's other factual allegations.  *U.S. Bank Nat. Ass'n*, 2012 WL 6136017 at *7 ("Where plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." (quoting *Nationwide Mut. Ins. Co.*, 2011 WL 381612 at *6)).  Ms. Greenwood has expressly incorporated the factual allegations from her initial and fourth amended complaint here.  FAC ¶ 7.  In her initial and fourth amended complaints, Ms. Greenwood made the inconsistent allegation that Mr. Gladstone did not become a member of AKC's board of directors until, at the earliest, 1999.  Compl. ¶ 71 ("In 1995, four years before he was seated as a member of the AKC Board of Directors, Gladstone himself. . . ."); Dkt. No. 28 ¶¶ 7, 9 ("Giving [Mr. Gladstone] even more power by allowing him to judge more Breeds, more Groups, and eventually BEST in Show, allowed him to become a member of AKC's Board of Directors. . . .").

Ms. Greenwood alleges that pursuant to its Rules, AKC had the authority to impose disciplinary sanctions on her rapists as a result of their assaults, which, she alleges occurred 'in connection with" both AKC's "Trial Board" event and the Westminster Kennel Club Dog Show. *Id.* ¶¶ 8, 12, 13, 14.  And she alleges that "[w]itnessing rape or sexual assault" meets AKC's definition of conduct "prejudicial to the sport" because such conduct "would drive 'the average family' away from participating in AKC events." *Id.* ¶ 29.

On January 19, 2026, AKC moved to dismiss the FAC.  *See generally* Dkt. Nos. 46 & 47.  Ms. Greenwood filed her opposition on March 4, 2026.  Dkt.  *See generally* Opp'n.  And on March 18, 2026, AKC replied.  *See generally* Dkt. No. 61.

## III.    LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  However, a defendant may move to dismiss a plaintiff's claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations and draws all inferences in the plaintiff's favor.  *See Palin v. N.Y. Times Co.*, 940 F.3d 804, 809–10 (2d Cir. 2019) (quoting *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017)); *Chase Grp. All. LLC v. City of N.Y Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at

9

556).  "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citations omitted).  "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  *Id.* (quoting *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006)).  A document is considered "integral" to the complaint where the plaintiff has "reli[ed] on the terms and effect of [the] document in drafting the complaint."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis omitted).  Such reliance "is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  *Id.*; *see Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (integral documents may include documents partially quoted in the complaint or on which plaintiff relied in drafting the complaint).  "[E]ven if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document," and it must be clear that "there exist no material disputed issues of fact regarding the relevance of the document."  *DiFolco*, 622 F.3d at 111 (quoting *Beer*, 463 F.3d at 134).

Because Plaintiff is proceeding *pro se*, the Court must liberally construe Plaintiff's submissions and interpret them "to raise the strongest arguments that they *suggest*."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir.

10

2006)); *see also, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . ." (citation omitted)).  Courts must afford *pro se* plaintiffs "'special solicitude' before granting motions to dismiss . . . ." *Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994)).  However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law." *Bell*, 980 F. Supp. 2d at 559 (internal quotation marks and citation omitted); *see also Rahman v. Schriro*, 22 F.Supp.3d 305, 310 (S.D.N.Y. 2014) ("[D]ismissal of a *pro se* complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997))).

## IV.    DISCUSSION

### A.    Plaintiff Fails to Adequately Plead an Aiding and Abetting Claim Against AKC

Ms. Greenwood fails to state a claim against AKC for aiding and abetting the sexual assaults perpetrated against her by either Mr. Gladstone or Mr. Phinizy[6] because she does adequately plead that AKC substantially assisted the commission of the underlying assaults.  Nor has Ms. Greenwood adequately pleaded that AKC knew of either the 1996 assault by Mr. Phinizy or the 1995 assault by Mr. Gladstone at the time the assaults occurred.  "[U]nder New York law, a plaintiff generally states a claim for aiding and abetting upon alleging facts sufficient to support an inference of '(1) the existence of a[n underlying tort]; (2) [the] defendant's knowledge of the [underlying tort]; and (3) that the defendant provided substantial assistance to advance the [underlying tort's] commission.'" *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012) (all alterations except the first in original)

---

[6] As Defendant argues, "Plaintiff does not allege in her [FAC] that AKC aided and abetted Phinizy."  Mem. at 12 n.7; *see* FAC ¶ 52 ("AKC had actual knowledge of *Gladstone's* sexual assault of Plaintiff. . . ." (emphasis added)).  Nonetheless, because Ms. Greenwood is proceeding *pro se* and because she "realleges all prior paragraphs" under the heading "COUNT I — Aiding and Abetting"), *id.* ¶ 51, the Court construes Ms. Greenwood's aiding and abetting claim as premised on both AKC's conduct with respect to Mr. Gladstone and Mr. Phinizy.

(quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (applying this standard to a claim for aiding and abetting fraud); then citing *Pittman by Pittman v. Grayson*, 149 F.3d 111, 122–23 (2d Cir.1998) (indicating that this standard applies to tort claims generally)); *see also Beter v. Baughman*, No. 24-CV-0079, 2024 WL 1333570 (S.D.N.Y. Mar. 13, 2024), *report and recommendation adopted*, 2024 WL 1329066, at * 13 (S.D.N.Y. Mar. 28, 2024) (citing *Doe 7015 v. Elektra Ent. Grp. Inc.*, No. 21-CV-6868, 2023 WL 2744102, at *4 (S.D.N.Y. Mar. 31, 2023) (quoting *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 172 (2d Cir. 2012))).

"'[A]ctual knowledge is required to impose liability on an aider and abettor under New York law.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (applying this standard to a claim for aiding and abetting fraud) (quoting *Kolbeck v. LIT America, Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996)); *see also JP Morgan Chase Bank v. Winnick*, 406 F. Supp. 2d 247, 252 n.4 (S.D.N.Y. 2005) (citing *OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F. Supp. 2d 357 (S.D.N.Y. 2005), *opinion adhered to on reconsideration*, No. 02 CIV. 8993, 2005 WL 309755 (S.D.N.Y. Feb. 9, 2005)) ("'[T]he weight of the case law . . . defines knowledge in the context of an aiding and abetting claim as actual knowledge."); *Farah v. City of New York*, 214 N.Y.S.3d 598 (N.Y. Sup. Ct.), *reargument denied*, (N.Y. Sup. Ct. 2024), *and aff'd*, 243 N.Y.S.3d 80 (2025) (requiring actual knowledge to adequately plead a claim for aiding and abetting assault).

"In addition, aiding and abetting[] requires the defendant to know or intend that his conduct will substantially assist in [the underlying assault's] commission in order to be liable for aiding and abetting." *Beter*, 2024 WL 1333570 at *13 (collecting cases). "Substantial assistance requires that[] 'a defendant must have committed some overt act, either by words or conduct, in furtherance of'" the alleged assault—in this case the 1995 and 1996 rapes and attempted rape. *Id.* (quoting *McKiernan v. Vaccaro*, 91 N.Y.S.3d 478, 481 (App. Div. 2019); then citing *Bigio*, 675 F.3d at 173). A plaintiff must show that the defendant engaged in "intentional or deliberate acts directed at causing harm . . . in

relation to the subject assault." *Doe 1 v. Deutsche Bank Aktiengesellschaft*, 671 F. Supp. 3d 387, 416 (S.D.N.Y. 2023) (quoting *Shea v. Cornell Univ.*, 596 N.Y.S.2d 502, 503–04 (App. Div. 1993)). And for any assistance to be "substantial" it "must be directed at the tort itself." *Beter*, 2024 WL 1333570 at *14 (quoting *Doe 7015*, 2023 WL 2744102 at *4). In other words, the assistance must "bear some contributory relation to the primary tort." *Bigio*, 675 F.3d at 173 (collecting cases).

Ms. Greenwood's aiding and abetting claim against AKC fails because Ms. Greenwood has not adequately pleaded that AKC "substantially assisted" either Mr. Gladstone or Mr. Phinizy in committing the underlying sexual assaults. *Beter*, 2024 WL 1333570 at *13. First, Ms. Greenwood's allegations that AKC aided and abetted the rapes by permitting "Gladstone even greater access to the registration power of the AKC" and by providing "its affirmative grant of authority and access" to Mr. Gladstone, FAC ¶ 52, are insufficient because neither allegation identifies any action by AKC which was "directed at the tort itself,' namely, any conduct by AKC by which it contributed to the commission of or "knowingly assisted . . . in carrying out the assault." *Lovett v. 2600 Seventh Ave. Realty, LLC*, 245 N.Y.S.3d 31, 33 (N.Y. App. Div. 1st Dep't 2000) (citing *Offenhartz v. Cohen*, 562 N.Y.S.2d 500 (1st Dept. 1990); then citing *Wilson v. DiCaprio*, 717 N.Y.S.2d 174 (2000)); *Doe 7015*, 2023 WL 2744102 at *4 (concluding that elevating a singer's stardom, acquiring additional distribution deals for his songs, and "fully embracing and promoting his music persona that was uniquely tied to pedophilia" was not conduct directed at the underlying sexual assault). Ms. Greenwood's "allegations support only the inference that the [] [d]efendant[] overtly encouraged" Mr. Gladstone's career in dog-showing but "not that they encouraged his sexual battery of Plaintiff." *Doe 7015*, 2023 WL 2744102 at *4.

Nor does Ms. Greenwood allege that AKC "committed some overt act, either by words or conduct, in furtherance of'" the underlying 1995 and 1996 rapes and attempted rape. *Beter*, 2024 WL 1333570 at *13; *see also Lovett*, 245 N.Y.S.3d at 33 ("As to the aiding and abetting assault cause of

13

action, plaintiff has alleged no affirmative act or words by defendants in which they knowingly assisted the employee in carrying out the assault . . . [the] inaction and later victim-blaming statements could not have been substantial factors in causing or abetting the assault."). Rather, Ms. Greenwood alleges that AKC's failure was in its inaction[7]—its alleged "knowing failure to act" and its purported failure in doing "nothing to protect the public from Gladstone." FAC ¶ 52. But doing nothing to guard against a potential future assault is not "substantial assistance" of any subsequent assault that might have been prevented—Ms. Greenwood does not adequately state a claim because "merely [harboring a dangerous person] or giving tacit approval" is not enough for assistance to be "substantial." *Beter*, 2024 WL 1333570 at *14 (quoting *Doe 7015*, 2023 WL 2744102 at *4 (quoting *Shea v. Cornell Univ.*, 596 N.Y.S.2d 502, 503–04 (App. Div. 1993))) ("Neither introducing Plaintiff to Baughman . . . nor counseling her not to report the assault after the fact would qualify as substantially assisting Baughman with the sexual assault."); *see also Lindsay v. Lockwood*, 625 N.Y.S.2d 393, 397 (N.Y. Sup. Ct. 1994) ("Liability under this theory requires more than an intention; there must be some overt act on the part of the aider connected with the act causing the injury. . . . Here, the evidence shows no act of encouragement by the other defendants that would constitute aiding or abetting the assault. The defendants' presence at the party by itself is not a wrong resulting in injury and driving to the party was not aid given in connection with a tortious act; the causal relationship is

---

[7]    Nor does Ms. Greenwood assert that AKC owed her a fiduciary duty. *Cf. Jacobs v. DraftKings Inc.*, No. 24-CV-03077, 2025 WL 746012 (E.D.N.Y. Mar. 7, 2025) (quoting *Lerner*, 459 F.3d at 295 for the proposition that "the mere inaction of an alleged aider and abettor constitutes substantial assistance only where a defendant owes a fiduciary duty directly to the Plaintiff").

       Rather, Ms. Greenwood asserts that "AKC owed [her] a duty of care as a longtime registrant and exhibitor." FAC ¶ 56. Ms. Greenwood has not adequately pleaded that AKC's Rules established a fiduciary duty to her as a participant in AKC programming because "the primary function of corporate bylaws [] is to provide a set of rules governing a corporation's internal operations, rather than to stipulate a set of legal obligations." *Petersen Energia Inversora S.A.U. v. Argentine Republic*, No. 23-7370, 2026 WL 850349 (2d Cir. Mar. 27, 2026) (summary order) (noting that "under United States law, corporate bylaws are not generally understood to create bilateral obligations among shareholders of a company that are enforceable under contract law"); *see also de Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1311 (2d Cir. 2002) ("As a policy matter, it makes no sense to discourage the adoption of higher standards than the law requires by treating them as predicates for liability. Courts therefore have sensibly declined to infer legal duties from internal 'house rules' or industry norms that advocate greater vigilance than otherwise required by law.").

too distant.").

Ms. Greenwood has failed to state a claim against AKC for aiding and abetting Mr. Gladstone's 1995[8] and Mr. Phinizy's 1996 assaults for an additional, independent reason—because she has not adequately pleaded that AKC had actual knowledge of the underlying assaults.  First, Ms. Greenwood does not adequately plead that AKC knew of Mr. Gladstone's 1995 assault.  Ms. Greenwood alleges that in the months following Mr. Gladstone's 1995 assault, she reported Mr. Gladstone's conduct[9] to a handful of individuals she describes as AKC "agents," including to Mr. Phinizy, who was on AKC's board of directors at that time.  FAC ¶¶ 9, 13, 45.  But because Ms. Greenwood did not report Mr. Gladstone's 1995 assault until after it had already occurred, she has not pleaded that AKC had actual knowledge of the 1995 assault.[10]  Finally, Plaintiff's broad allegations that AKC "knew about the 1995 rape" and knew that "Gladstone was an untrustworthy, unethical, immoral AKC agent," and "was a dangerous man" because of the then-pending case between AKC and Mr. Gladstone are too conclusory to support the conclusion that AKC had actual knowledge of Mr. Gladstone's 1995 assault.  Dkt. No. 28 ¶¶ 7, 35, 249, 319.  And as Ms. Greenwood alleges, what was "at issue" in that case were allegations that AKC "engaged in fraud with respect to registering dogs . . . that the AKC knew were not deserving of AKC registration."  Compl. ¶¶ 207–09.  She does not allege how the case between Mr. Gladstone and AKC—which began in 1993, two years before the alleged assault—informed AKC of the 1995 assault against her by Mr. Gladstone.

---

[8] Ms. Greenwood alleges that she reported the Mr. Gladstone's 1995 assault to Mr. Phinizy in September 1995 and that Mr. Phinizy was a member of AKC's board of directors at the time of her report.  The Court need not determine whether Ms. Greenwood's allegations adequately plead that Mr. Phinizy was AKC's agent by virtue of his position on its board of directors because Ms. Greenwood does not adequately plead that AKC substantially assisted any of the alleged assaults.  Accordingly, the Court does not reach this issue.

[9] Ms. Greenwood does not allege that she reported Mr. Gladstone's 1996 assault to anyone, and not to the AKC itself until at least 2015.

[10] Nor does Ms. Greenwood allege facts to support that AKC had contemporaneous knowledge of the 1995 assault, for example, by alleging that anyone affiliated with AKC witnessed the assault.

Second, Plaintiff does not allege that AKC had actual knowledge of Mr. Phinizy's assault. Nowhere in any of Ms. Greenwood's pleadings does she allege that she reported Mr. Phinizy's conduct to anyone. As a result, Plaintiff has failed to plausibly allege that AKC had actual knowledge of the alleged sexual assault by Mr. Gladstone in 1995 or the alleged sexual assault by Mr. Phinizy in 1996. Accordingly, the Court dismisses Plaintiff's claim against AKC for aiding and abetting the sexual assaults allegedly committed by Mr. Gladstone and Mr. Phinizy.

**B.    Plaintiff Fails to Adequately Plead an Intentional Infliction of Emotional Distress Claim Against AKC**

Ms. Greenwood has failed to adequately plead her claim against AKC for IIED for the same reasons the Court identified in its first Opinion—because she has failed to adequately plead either that AKC's conduct was sufficiently "outrageous" or that AKC had the requisite intent to cause any emotional distress with respect to either the assault by Mr. Phinizy in 1996 or the assault by Mr. Gladstone in 1995. Ms. Greenwood's IIED claim is predicated on the same conduct underlying her other claims, namely—the alleged sexual assaults, FAC ¶ 53 ("Plaintiff realleges all prior paragraphs."), and AKC's conduct in "protecting a known sexual predator in its leadership,"[11] *id.* ¶ 54.

To state a claim for IIED under New York law, a plaintiff must plausibly allege: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019). IIED is a

---

[11] With respect to her IIED claim against AKC Ms. Greenwood makes two additional allegations—that AKC "disregard[ed] federal and congressional evidence of ongoing coercion . . . and deliberately destroy[ed] Plaintiff's livelihood when she cooperated with authorities. FAC ¶ 54. These allegations are again premised on alleged conduct by AKC or its purported agents that arose in North Carolina in connection with AKC's inspection of Ms. Greenwood's home in Carthage, North Carolina and AKC's subsequent decision to revoke the registration of her Doberman Pinschers. Op. at 6–9 (outlining Ms. Greenwood's allegations with respect to events arising in North Carolina and the Carthage, North Carolina property). Ms. Greenwood must "pursue those claims in the Middle District of North Carolina." *Id.* at 27.

16

"highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 1578 (2d Cir. 2014). "Liability has been found only where the conduct [is] so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (1983) (quoting Restatement (Second) of Torts § 46, comment d)). The New York Court of Appeals once observed that, of the IIED claims it had considered, "every one ha[d] failed because the alleged conduct was not sufficiently outrageous." *Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 122 (1993) (collecting cases).

Ms. Greenwood has not pleaded any conduct by AKC that meets "the high threshold for conduct that is 'extreme and outrageous' enough to constitute intentional infliction of emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (quotation omitted). As with her prior complaint, "Plaintiff does not bring this claim (or any of [her] claims) against" Mr. Gladstone or Mr. Phinizy—the individuals she alleges committed the sexual assaults. *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 378 (S.D.N.Y. 2017). "Thus, the Court looks not to the allegations concerning those individuals' conduct, but rather to the alleged conduct of" the defendant, AKC. *Id.* Ms. Greenwood's FAC makes clear that she faults AKC for "protecting a known sexual predator in its leadership," by allowing him to judge more breeds, judge best in show, and later become a member of AKC's board of directors. FAC ¶ 54.

As discussed in its prior Opinion, AKC's decision to continue affiliating with Mr. Gladstone and it alleged failure to initiate disciplinary proceedings against him, does not rise to the level of "extreme and outrageous conduct" required to adequately plead this "disfavored" tort. *Beter*, 2024 WL 1333570 at *12 (holding that conduct by a third party who introduced the plaintiff to a person who was an alleged sexual predator and warned that alleged assaulter not to touch the plaintiff was not sufficiently extreme or outrageous to support a claim for IIED); *Nungesser*, 244 F. Supp. 3d at

17

378; *James v. DeGrandis*, 138 F. Supp. 2d 402, 421 (W.D.N.Y. 2001) ("[E]ven a false charge of sexual harassment does not rise to the level of outrage required" under New York law.").

And Ms. Greenwood has failed to adequately plead that AKC intended to cause her distress with respect to either the assault allegedly perpetrated by Mr. Gladstone in 1995 or Mr. Phinizy's assault in 1996. *Id.* As discussed above, Ms. Greenwood has not plausibly alleged that AKC knew of either the alleged assault by Mr. Gladstone in 1995[12] or the alleged assault by Mr. Phinizy in 1996 at the time the assaults occurred. With respect to Mr. Gladstone's 1995 assault, Ms. Greenwood alleges that she reported Mr. Gladstone to other alleged "AKC agents," including Mr. Phinizy, in the months following the 1995 rape. She does not however allege that AKC knew of Mr. Gladstone's alleged 1995 assault prior to or at the time it occurred. Nor does she allege that AKC knew of Mr. Gladstone's propensity for sexual violence before her 1995 reports. And with respect to Mr. Phinizy's 1996 assault, Mr. Greenwood does not allege that she ever reported Mr. Phinizy's conduct to anyone. As a result, Ms. Greenwood has not adequately pleaded that AKC intended to cause her distress with respect to the assault by Mr. Phinizy in 1996 or with respect to the assault by Mr. Gladstone in 1995. Accordingly, because Ms. Greenwood has not adequately alleged either that AKC's conduct was extreme or, with respect to the assault by Mr. Phinizy in 1996 and the assault by Mr. Gladstone in 1995, that AKC had the requisite intent, the Court dismisses Ms. Greenwood's IIED claim against AKC.

C.      **Plaintiff Fails to Adequately Plead Negligent Supervision or Retention**

As with Ms. Greenwood's fourth amended complaint, although the FAC's negligence and gross negligence claims are not artfully pleaded, the Court construes the operative complaint as

---

[12] As noted above, Ms. Greenwood alleges that she reported the Mr. Gladstone's 1995 assault to Mr. Phinizy, who was a member of AKC's board of directors at the time of Ms. Greenwood's report. Because Ms. Greenwood has not adequately pleaded the kind of "extreme" conduct necessary to state her IIED claim, the Court need not reach decide whether Mr. Phinizy is an AKC agent by virtue of his position on AKC's board of directors.

18

asserting a claim against AKC for negligent supervision given the solicitude due to *pro se* litigants.[13] The Court construes Ms. Greenwood's negligence and gross negligence claims as asserting a claim for negligent supervision because Ms. Greenwood alleges that AKC "fail[ed] to investigate or remediate known criminal conduct by its Board member."[14]  FAC ¶ 56.  Ms. Greenwood has not adequately pleaded a negligent supervision or retention claim against the AKC with respect to either Mr. Gladstone or Mr. Phinizy.

"Under New York law, a tort plaintiff seeking to prove a defendant's negligence must show: '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'"  *Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 445 (2d Cir. 2023) (quoting *Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021)).  "If the defendant owes no duty to the plaintiff, the action must fail."  *Pasternack v. Lab'y Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir.), *as amended* (Nov. 23, 2015), *certified question accepted*, 26 N.Y.3d 1074, 23 N.Y.S.3d 151, 44 N.E.3d 226 (2015), *and answered*, 27 N.Y.3d 817, 37 N.Y.S.3d 750, 59 N.E.3d 485 (2016) (internal citations omitted)).  And "[u]nder New York law, . . . '[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others.'"  *Ehrens v. Lutheran Church*,

---

[13]    As Ms. Greenwood is proceeding *pro se*, the Court reads her "negligence" claims as asserting a claim for negligent hiring and supervision and not as asserting a claim of *respondeat superior* liability because on the facts of this case the two claims are mutually exclusive.  Here, Ms. Greenwood cannot both raise a claim for negligent supervision and a claim for negligence under a *respondeat superior* theory based on the same factual allegations because "[a] claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of her employment."  *Rodriguez v. City of New York*, 594 F. Supp. 3d 534, 548 (E.D.N.Y. 2022) (quoting *Colodney v. Continuum Health Partners, Inc.*, 2004 WL 829158 at *8 (S.D.N.Y. Apr. 15, 2004)).  "When an employee is acting within the scope of her employment, her employer may be held liable for the employee's negligence only under a theory of *respondeat superior*, and no claim may proceed against the employer for negligent hiring or retention."  *Id.*

And even if the two claims could be asserted concurrently based on the same factual allegations, Ms. Greenwood has not adequately pleaded *respondeat superior* liability.  Under the doctrine of *respondeat superior*, an employer is not liable "for actions which were not taken in furtherance of the employer's interest and which were undertaken by the employee for wholly personal reasons."  *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014) (quoting *Galvani v. Nassau Cty. Police Indemnification Review Bd.*, 674 N.Y.S.2d 690 (2d Dep't 1998)).  And "New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context."  *Id.* (quoting *Ross v. Mitsui Fudosan*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)) (collecting cases).

[14] As noted above, the FAC's allegation that Mr. Gladstone was a member of AKC's board of directors in 1995 and 1996 is "internally inconsistent" with and "contradictory" to Ms. Greenwood's other factual allegations.  *U.S. Bank Nat. Ass'n*, 2012 WL 6136017 at *7.

385 F.3d 232, 235 (2d Cir. 2004) (alterations in original) (quoting *D'Amico v. Christie*, 71 N.Y.2d 76 (1987)).

"Nevertheless, . . . [a defendant may be] liable for a [third party's] tortious conduct on a theory of negligent retention or supervision." *Id.* "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ahluwalia v. St. George's U., LLC*, 63 F. Supp. 3d 251, 263 (E.D.N.Y. 2014), *aff'd*, 626 F. App'x 297 (2d Cir. 2015) (summary order) (quoting *Doe v. City of New York,* No. 09-cv-9895, 2013 WL 796014, at *3 (S.D.N.Y. Mar. 4, 2013), *aff'd*, 558 F. App'x 75 (2d Cir. 2014) (summary order)).

Ms. Greenwood has not adequately pleaded her negligent supervision or retention claim against AKC with respect to its alleged failure to supervise Mr. Gladstone because Ms. Greenwood has not adequately pleaded that Mr. Gladstone was employed by AKC at the time of the 1995 and 1996 assaults. Ms. Greenwood alleges in her pleadings that at the time of 1995 and 1996 sexual assaults, Mr. Gladstone was working in private practice as an attorney and was an adversary to the AKC in a then-pending legal matter. *See* Dkt. No. 28 ¶¶ 7, 249; Compl. ¶¶ 71, 72. Ms. Greenwood alleges that at the time of the assaults Mr. Gladstone was also "an AKC licensed judge" and an "Officer of an AKC Member Club." *Id.* ¶ 9. But she has not plausibly pleaded that AKC judges or officers of AKC member clubs are AKC employees. *Maurizi v. Callaghan*, No. 20-CV-922, 2022 WL 1446500, at *13 (W.D.N.Y. Feb. 25, 2022), *report and recommendation adopted*, No. 20-CV-922, 2022 WL 1444182 (W.D.N.Y. May 5, 2022) ("Plaintiff's allegations that unidentified 'skating judges' knew of the alleged abuse are also insufficient to hold [defendant] liable . . . because there are no

allegations that such judges are employees or agents of [defendant]." (internal citations omitted)). Because Ms. Greenwood has failed to plead that Mr. Gladstone and AKC had any employment relationship at the time of the New York City assaults, she has not plausibly pleaded a claim for negligent supervision against AKC with respect to Mr. Gladstone.

And even if the Court were to assume that Ms. Greenwood had plausibly pleaded that Mr. Gladstone and Mr. Phinizy were AKC employees, "the absence in the FAC of [any] factual allegations concerning [the] propensity for sexual assault and [Defendant's] knowledge is fatal to Plaintiff's negligence claim and warrants dismissal." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (citing *Ross v. Mitsui Fudosan, Inc.,* 2 F. Supp. 2d 522, 532–33 (S.D.N.Y. 1998) ("Conclusory allegations of negligent supervision are insufficient to overcome a motion to dismiss."). "Knowledge can be established directly, including through an employee's complaint . . . or constructively, as when sexual harassment is pervasive throughout the workplace." *O'Rear v. Diaz*, No. 24 Civ. 1669, 2025 WL 283169 at *6 (S.D.N.Y. Jan. 23, 2025) (internal citations omitted) (citing *Sutherland v. Roman Cath. Diocese of Rochester*, 833 N.Y.S.2d 819, 820 (4th Dep't 2007); then citing *Vitale v. Rosina Food Prods., Inc.*, 727 N.Y.S.2d 215, 217 (4th Dep't 2001)).

With respect to Mr. Phinizy, Ms. Greenwood does not allege that AKC had actual knowledge of his conduct or constructive knowledge of his propensity for sexual assault. As described above, Ms. Greenwood does not allege that she reported Mr. Phinizy's conduct to anyone. Nor does she allege that AKC "knew or should have known" of Mr. Phinizy's "propensity for sexual assault." *O'Rear*, 2025 WL 283169 at *11. As a result, Ms. Greenwood has not plausibly pleaded that AKC had any knowledge, or should have had knowledge, of Mr. Phinizy's assault.

With respect to Mr. Gladstone's 1995 assault, although Ms. Greenwood alleges that she provided "actual notice of [the] purported sexual conduct, that notice arose *after* the conduct had

occurred."[15]  *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 94 (2d Cir. 2011)

(dismissing negligent supervision claim because actual notice was provided only after the assault

occurred).  And, as described above, Ms. Greenwood has not plausibly alleged that AKC knew of

Mr. Gladstone's 1995 "conduct which caused the injury *prior to the injury's occurrence*," *Ahluwalia v*, 63

F. Supp. 3d 251, 263, *aff'd*, 626 F. App'x 297 (2d Cir. 2015) (summary order).  Here too, Plaintiff's

conclusory allegations that AKC "knew about the 1995 rape" and knew that "Gladstone was an

untrustworthy, unethical, immoral AKC agent," and "was a dangerous man" because of the then-

pending case between AKC and Mr. Gladstone are insufficient.  Dkt. No. 28 ¶¶ 7, 35, 249, 319.  As

the Second Circuit has articulated—

> New York law appears to take differing approaches relating to foreseeability in cases
> alleging that sexual assault by an employee was foreseeable to the employer.  In
> some cases, the plaintiff must offer evidence that the employer knew (or should
> have known) of the employee's "propensity . . . to engage in inappropriate sexual
> conduct."  In other cases, the plaintiff has been required to show only that the
> employer knew (or should have known) of the employee's propensity to engage in
> physical assault, whether or not such conduct was of a sexual nature.

*Doe v. Montefiore Med. Ctr.*, 598 F. App'x 42, 43 (2d Cir. 2015) (summary order) (quoting *Ehrens*, 385

F.3d at 235; then citing *Dawn VV v. State of New York*, 850 N.Y.S.2d 246, 249 (App. Div. 3d Dep't

2008)).  Under either articulation, "[t]he prior misconduct . . . must be of the same kind that caused

the injury; general, unrelated or lesser allegations of prior wrongdoing are insufficient."  *Doe*, 12 F.

Supp. 3d at 681 (collecting cases).  Ms. Greenwood's "general," *id.*, allegations that AKC knew of

the 1995 assault because of its prior knowledge that Mr. Gladstone was "dangerous,"

"untrustworthy," and "unethical" are insufficient because she has not alleged that AKC knew either

that Mr. Gladstone had a propensity to engage in inappropriate sexual conduct or that AKC knew

that Mr. Gladstone had a propensity to engage in physical assault.  *Doe*, 598 F. App'x at 43 (summary

---

[15] Because Ms. Greenwood alleges that AKC only learned of the 1995 assault by Mr. Gladstone and the 1996 assault by
Mr. Phinizy after they occurred, she has not plausibly alleged that AKC breached an assumed duty to intervene or
prevent the assaults in the first instance.

order).  And Ms. Greenwood's allegations that AKC knew that Mr. Gladstone "was a dangerous man" are not enough to plausibly plead that AKC had constructive knowledge of Mr. Gladstone's propensity for "the same kind" of conduct of which she complains, namely, the sexual assault.  *Doe*, 12 F. Supp. 3d at 681 (collecting cases).  Accordingly, because Ms. Greenwood has failed to allege that AKC had actual or constructive knowledge of the assault by Mr. Phinizy in 1996 or of the assault by Mr. Gladstone in 1995,[16] she has not plausibly pleaded a claim for negligent supervision for this reason as well.

In sum, Ms. Greenwood has failed to adequately plead a negligent supervision or retention claim against the AKC with respect to either Mr. Gladstone or Mr. Phinizy.  Accordingly, the Court dismisses Ms. Greenwood's negligent supervision and retention claim against AKC.

## V.    LEAVE TO AMEND

Because Ms. Greenwood is proceeding *pro se*, "[i]f a liberal reading of the pleading 'gives any indication that a valid claim might be stated,' this Court must grant leave to amend."  *Briggs v. Women in Need, Inc.*, 819 F. Supp. 2d 119, 25 (E.D.N.Y. 2011) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).  Nevertheless, leave to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008) (per curiam).  "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim . . . ."  *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224– 25 (2d Cir. 2017) (quoting *Panther Partners Inc. v. Ikanos*

---

[16] Because the Court concludes that Ms. Greenwood has not alleged facts to support the conclusion that Mr. Gladstone was an AKC employee in either 1995 or 1996, and because this alone is fatal to Ms. Greenwood's negligent supervision claim, the Court need not determine whether her report to Mr. Phinizy in September 1995 meant that AKC should have been aware of Mr. Gladstone's propensity for such conduct by the time of the 1996 assault.  As noted above, this depends on whether Mr. Phinizy's role as a board member meant that he was acting as AKC's agent such that his knowledge can be imputed to AKC.

*Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012)). "[R]epeated failure to cure deficiencies by amendments previously allowed" warrants denial of leave to amend. *Dluhos v. Floating and Abandoned Vessel, Known as New York*, 162 F.3d 63, 69 (2d Cir. 1998). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).

Here, the Court cannot conclude that an amendment could cure the deficiencies identified with respect to Plaintiff's claims against AKC for the alleged assaults perpetrated by Mr. Phinizy and Mr. Gladstone. The FAC is Ms. Greenwood's fifth amended complaint—Ms. Greenwood has had multiple opportunities to amend her complaint to add facts to adequately plead that AKC should be held liable for the conduct of Mr. Phinizy or Mr. Gladstone yet has failed to do so. Ms. Greenwood filed her second amended complaint, Dkt. No. 25, after the Court held an in-person pre-motion conference in advance of AKC's first motion to dismiss, Dkt. No. 22, and after AKC filed that motion to dismiss, Dkt. No. 23. And Ms. Greenwood has now had the opportunity to amend her complaint to allege additional facts to support her claims for aiding and abetting, IIED, and negligent supervision with the benefit of a ruling from the Court addressing those claims. In its prior Opinion, the Court clearly identified the deficiencies with respect to Ms. Greenwood's state law claims, and granted Plaintiff leave to amend to cure those defects. As explained herein, Ms. Greenwood has not cured those defects, and her claims fail now for substantially the same reasons the Court identified in its prior Opinion. As a result, further amendment of Plaintiff's claims for aiding and abetting, IIED, and negligent supervision against AKC would be futile. Accordingly, the Court dismisses Plaintiff's aiding and abetting, IIED, and negligent supervision against AKC with prejudice and without leave to amend.

## VI.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. Plaintiff's claims

for aiding and abetting, IIED, and negligent supervision against AKC are dismissed with prejudice and without leave to amend.  The Court requests that counsel for Defendant provide Plaintiff with copies of unpublished cases cited in this decision pursuant to Local Rule of the United States District Courts for the Southern and Eastern Districts of New York 7.2.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is directed to and to mail a copy of this opinion to Plaintiff by certified mail, to terminate the motion pending at Dkt. No. 46, to enter judgment in favor of Defendant on all counts, and to close this case.

SO ORDERED.

Dated:  April 24, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

25